J-S64012-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYHEED K. BROWN | : | |
| | : | |
| Appellant | : | No. 2808 EDA 2017 |

Appeal from the Judgment of Sentence April 24, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0010293-2015

BEFORE:  BOWES, J., OLSON, J., and KUNSELMAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED JANUARY 15, 2019**

Tyheed K. Brown appeals the judgment of sentence imposed following his conviction for DUI: general impairment/incapable of driving safely.  We affirm.

The trial court set forth the relevant factual and procedural history underlying the instant appeal as follows:

> On November 2, 2012[,] at approximately 9:25 p.m., Lieutenant Mike Zimmerman was on routine patrol, driving eastbound on the 500 block of Cambria Street.  When Lieutenant Zimmerman reached the intersection of 5th and Cambria, he saw that several people were trying to get his attention by jumping up and down, waiving and yelling.  He testified that he heard a radio call about the accident as he was already pulling over to investigate it, so he believed that he arrived "[p]robably 30 seconds to a minute" after the crash.  As Lieutenant Zimmerman pulled over and approached those people, he saw a black Honda CRV with rear-end damage, a green 1999 Ford with front-end damage, and a severed light pole.  He also noticed debris on the street at that intersection that came from the severed light pole and possibly the cars involved in the collision.  5th Street is a commercial corridor, and the side

streets intersecting 5th [S]treet are more residential, so there was a crowd of about 20 to 25 people at the scene of the car collision.

Lieutenant [Zimmerman] found [Appellant] sitting on the ground near the green Ford, with four or five members of the larger crowd circled around him. They drew Lieutenant Zimmerman's attention to [Appellant] by pointing their fingers at him and telling the lieutenant that he was driving one of the cars involved in the accident. Lieutenant Zimmerman approached [Appellant] at that point, and he observed [Appellant's] bloodshot eyes, slurred speech, and a strong odor of alcohol emanating from [his] breath as he spoke. The [l]ieutenant did not observe anyone else inside the green Ford. Based on the eyewitnesses' statements and behavior, Lieutenant Zimmerman believed that [Appellant] was driving the green Ford, and based upon his own observations, he concluded that [Appellant] was under the influence of alcohol and incapable of driving safely, so he called for backup officers to process [Appellant's] arrest.

. . . .

[A magistrate] found [Appellant] guilty of DUI: general impairment and DUI: highest rate of alcohol. *See* MC 51-CR-0045098-2012.

[Appellant] timely appealed, and on December 5, 2016, [Appellant] waived his right to a jury trial and was tried before th[e trial c]ourt in a bench trial. Th[e trial c]ourt convicted him of DUI: general impairment, and the other DUI charges were *nolle prossed*. Sentencing was deferred initially pending a Presentence Investigation and later due to [Appellant's] request. On April 3, 2017, [Appellant] filed a Motion for Extraordinary Relief. On April 24, 2017, after oral argument, the trial court denied this Motion for Extraordinary Relief and sentenced [Appellant] to 48 hours to 6 months incarceration, with immediate parole after 48 hours to be served on one weekend.

[Appellant] promptly filed a post-sentence Motion for a New Trial in the Interests of Justice on April 27, 2017. This post-sentence motion was denied by operation of law on August 28, 2017. [Appellant] filed a timely notice of appeal on August 31, 2017. On September 27, 2017, the [trial c]ourt entered an [o]rder directing [Appellant] to file a statement of [errors c]omplained of on [a]ppeal within twenty-one (21) days. [Appellant complied with

that order, and the trial court thereafter filed its Pa.R.A.P. 1925(a) opinion.]

Trial Court Opinion, 12/18/17, at 1-2 (citations to the record and footnotes omitted).

Appellant raises the following issue for our review:

Did the lower court err by admitting hearsay evidence elicited during the trial testimony of the sole Commonwealth witness, Lieutenant . . . Zimmerman, which mostly consisted of statements from unidentified members of a crowd who identified [Appellant] as the driver of a vehicle involved in an accident, but including any other hearsay evidence used substantively against [Appellant], in that the Commonwealth failed to establish any exception to the rule against hearsay which permitted the use of hearsay evidence as substantive evidence to prove [Appellant's] guilt of driving under the influence?

Appellant's brief at 3.

In reviewing a trial court's ruling on the admissibility of evidence, our standard of review is one of deference. *Commonwealth v. Selenski*, 18 A.3d 1229, 1232 (Pa.Super. 2011). Questions concerning the admissibility of evidence are within "the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion." *Id*. (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa.Super. 2005) (internal citations and quotation marks omitted).

"'Hearsay' means a statement that . . . the declarant does not make while testifying at the current trial or hearing; and ... a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801(c). "Hearsay is not admissible except as provided by [the Pennsylvania Rules of Evidence], by other rules prescribed by the Pennsylvania Supreme Court, or by statute." Pa.R.E. 802.

To ensure a party the guarantees of trustworthiness resulting from a declarant's presence in court, a proponent of hearsay evidence must point to a reliable hearsay exception before such testimony will be admitted. *Commonwealth v. Smith*, 681 A.2d 1288, 1290 (Pa. 1996). Thus, the burden of production is on the proponent of the hearsay statement to convince the court of its admissibility under one of the exceptions. *Id*.

Here, the trial court determined that the hearsay statements made by bystanders to Lieutenant Zimmerman were admissible as excited utterances under Pa.R.E. 803(2). In determining whether an out-of-court statement constitutes an excited utterance, we are mindful of the following principles:

> Rule 803(2) of the Pennsylvania Rules of Evidence permits the admission of an excited utterance as an exception to the general rule that hearsay evidence is inadmissible. The Rule defines an excited utterance as: "A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event." In *Commonwealth v. Stallworth*, 781 A.2d 110, 119-20 (Pa. 2001), [the Supreme Court of Pennsylvania] held that for a statement to be considered an excited utterance, it must be made spontaneously and without opportunity for reflection:

> [A] spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person has just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties . . . Thus, it must be shown first, that [the declarant] had witnessed an event sufficiently startling and so close in point of time as to render her reflective though processes inoperable and, second, that her declarations were a spontaneous reaction to that startling event. ***Commonwealth v. Stokes***, 615 A.2d 704, 712 (Pa. 1992), quoting ***Commonwealth v. Green***, 409 A.2d 371, 373-74 (Pa. 1979).
>
> In ***Commonwealth v. Pronkoskie***, 383 A.2d 858, 862-63 (Pa. 1978), [our Supreme Court] further held that there is no clear-cut rule as to the time sequence required for a statement to qualify as an excited utterance, but rather that fact-specific determination is to be made on a case-by-case basis.

***Commonwealth v. Gray***, 867 A.2d 560, 572 (Pa.Super. 2005) (quoting ***Commonwealth v. Boczkowski***, 846 A.2d 75, 95-96 (Pa. 2004) (cleaned up)).

Additionally, "in assessing a statement offered as an excited utterance, the court must consider, among other things whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." ***Commonwealth v. Carmody***, 799 A.2d 143, 147 (Pa.Super. 2002). Our Courts have not established a bright line rule regarding the amount of time that may elapse between the declarant's

experience and her statement. *Id*. Rather, "the crucial question, regardless of time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Id*. (quotations omitted). "It is the spontaneity of an excited utterance [that] is the source of reliability and the touchstone of admissibility." *Id*. (quotations omitted).

In addition, with respect to the excited utterances of an unidentified bystander, an additional proof requirement is necessary before his or her statements will be deemed admissible pursuant to the res gestae exception. In this regard, the party seeking the admission of the out-of-court statement must demonstrate by the use of other corroborating evidence that the declarant actually viewed the event of which she spoke. *Commonwealth v. Hood*, 872 A.2d 175, 183-84 (Pa.Super. 2005).

Appellant argues that there was no evidence that the bystanders who identified him as the driver of a vehicle involved in the accident had actually observed him driving or the accident itself. Specifically, he contends "there was no evidence from which a presumption could be made that the declarants referred to by the officer were relating something they had actually seen (*i.e.*, [Appellant] driving one of the cars), as opposed to simply repeating hearsay from other sources, or jumping to conclusions about something they had not personally observed. Appellant's brief at 14-15. Appellant reasons that "people gathered to view the **aftermath** of a car accident would not

- 6 -

necessarily have personal knowledge of who was involved in the accident unless they saw the accident **as it occurred** or **before** the vehicles were vacated." *Id*. at 15-16 (emphasis in original). Appellant concedes that certain individuals in the crowd may have witnessed the accident and could have stated from personal knowledge that he was driving one of the vehicles involved, but argues that there was no way to differentiate between such individuals and those who arrived too late to make these personal observations.[1]

Here, the trial court determined that the bystander statements to Lieutenant Zimmerman - that Appellant was the driver of one of the vehicles involved in the accident - were admissible under the excited utterance exception to the rule against hearsay, reasoning as follows:

> [T]he two-car collision that knocked over a light pole was an "unexpected and shocking occurrence," as evidenced by the fact that roughly twenty people in a commercial corridor in Philadelphia thought this was a significant enough event to stop what they were doing and flag down a patrolling police officer. Although it is not clear that every single bystander witnessed the collision, this [c]ourt was satisfied that the hearsay declarants reported what they observed and that they had no reason to fabricate the fact that [Appellant] was driving a vehicle involved in the collision. . . .
>
> Second, while the timeline here is not precise, the [c]ourt inferred that very little time lapsed between the collision and the

---

[1] Appellant also argues that the hearsay testimony provided by Lieutenant Zimmerman was not admissible as a "present sense impression." *See* Pa.R.E. 803(1). However, as that hearsay exception was not the basis for the trial court's admission of the bystander statements, we decline to address that exception.

statements made to Lieutenant Zimmerman upon his arrival, particularly because the accident occurred in the intersection of a busy commercial area, and the lieutenant testified that as he pulled over, he could hear a radio call directing police to the accident. . . . Here, the facts that the hearsay declarants flagged down Lieutenant Zimmerman and that he observed no other police officers at the scene suggest that the hearsay declarants are analogous to the declarants in other cases; they reported startling events to law enforcement without much time for reflection about or fabrication of those events.

Third, these statements were not presented in a detailed, narrative form; rather, they merely identify [Appellant] as the person operating a car involved in an accident. Much of Lieutenant Zimmerman's testimony focused on the bystanders' actions: they flagged him down by jumping and waiving their arms, and they clustered around [Appellant] and pointed at him as he sat by the car. The trial court only admitted the bystanders' statements that an accident occurred and that [Appellant] drove one of the cars involved. The hearsay statements did not offer any detailed narration of how the accident occurred or what the parties involved in the accident said.

Finally, it is not clear whether the declarants spoke to each other before making these statements to Lieutenant Zimmerman, but this [c]ourt determined that that factor was not dispositive in this case[,] given the limited nature of the hearsay admitted. . . . Although defense counsel correctly notes that we do not know what every bystander's motives were, . . . it was apparent to this [c]ourt that these bystanders did not form an angry mob; rather, they gathered together to observe the aftermath of a car accident and to ensure that a police officer quickly responded to what could be an emergency situation.

Trial Court Opinion, 12/18/17, at 6-8 (footnote omitted).

Based on our review, we discern no abuse of discretion by the trial court in admitting the limited hearsay statements in question. Lieutenant Zimmerman testified that he believed that he arrived at the scene thirty seconds to one minute after the accident occurred, and that there were

already twenty to twenty-five bystanders at the scene who provided consistent, mutually corroborating statements and gestures identifying Appellant as the driver of one of the vehicles involved in the accident. These circumstances sufficiently establish corroborating evidence that at least some of the bystanders actually viewed the accident and could state with personal knowledge that Appellant was driving one of the vehicles involved in the collision. ***Hood***, ***supra***.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/15/19